**WO**                                                                                           SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Raymond Earl Rigsby,  )  No. CV 07-0916-PHX-EHC (ECV)
      Plaintiff,  )
        ) **ORDER**
vs.  )
        )
Dora Schriro, et al.  )
      Defendants.  )
        )

Plaintiff Raymond Earl Rigsby filed this civil rights action under 42 U.S.C. § 1983 against various officials and employees of the Arizona Department of Corrections (ADC). (Doc. #15.) Defendants[1] move to dismiss on the grounds that Plaintiff failed to exhaust his administrative remedies and the statute of limitations bars all claims that accrued before May 3, 2005.[2] (Doc. #38.) The Court issued an Order, required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003), informing Plaintiff of his obligation to respond and the evidence necessary to rebut Defendants' contentions. (Doc. #40.) The matter is fully

---

[1] Schriro, Fizer, and Toersbijns move to dismiss, and Kinsler joins the motion. (Doc. #65.)

[2] Defendants filed an Answer to the First Amended Complaint on the same day they moved to dismiss. (Doc. ##38, 39.) The Answer asserted the defense of failure to exhaust. (Doc. #39 at 3.) When the exhaustion requirement is not jurisdictional, failure to exhaust is a defense subject to an unenumerated motion under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). As an unenumerated motion, a motion to dismiss on such grounds need not be made before answering. Fed. R. Civ. P. 12(b).

briefed. (Doc. #55, 58.)

The Court will grant the motion.

## I. Background

In Count I of his First Amended Complaint, Plaintiff alleged that his Eighth Amendment rights were violated by overcrowded conditions of confinement—which resulted in insufficient toilets and showers; limited exercise schedules; intolerable noise levels; stress, tension, and hostilities between inmates; and increased violence—when he lived at the Stiner Red, Bachman, Winchester, and Cook Units. (Doc. #15.) Plaintiff alleged that he lived at the Steiner Red Unit from July 15, 2002, to July 15, 2004; at the Bachman Unit from July 20, 2004, to approximately January 14, 2005; at the Winchester Unit from January 14, 2005, to August 23, 2005; and at the Cook Unit from September 20, 2005, to July 2, 2007, when he filed the Complaint.

The Court issued a screening Order pursuant to 28 U.S.C. § 1915A(a), holding that claims arising prior to April 30, 2005, were barred by the two-year statute of limitations and that, because Plaintiff was at the Steiner and Bachman Units before April 2005, claims arising out of his confinement there and against Defendants employed there were barred.[3] The Court ordered Defendants Schriro, Fizer, Kinsler, and Toersbijns to answer Count I and dismissed the remaining claims and Defendants. (Doc. #31.)

Defendants now move to dismiss on the grounds that (1) Plaintiff did not exhaust his administrative remedies before filing this lawsuit and (2) the two-year statute of limitations bars all claims that accrued before May 3, 2005. (Doc. #38.) Plaintiff argues that he was the victim of multiple assaults on July 15, 2004; he had mental and psychological injuries; he was "not aware of critical facts to give him reason to believe prison officials were liable for his injuries" until June 2006; he was told on October 16, 2006, by Toersbijns that double-

---

[3]Defendants had moved to dismiss before Plaintiff filed his First Amended Complaint. (Doc. #23.) They raised the statute of limitations and failure to exhaust administrative remedies. On screening, the Court considered the motion and dismissed certain claims as time-barred but determined that the motion was moot as to exhaustion because it was made with regard to the original Complaint. (Doc. #31.)

1 bunking at Cook was not a grievable issue; and by the time Plaintiff could initiate and pursue
2 the grievance procedure, his time limit for doing so had expired. As to the statute of
3 limitations, Plaintiff asserts that prison officials refused to give him a copy of the
4 investigative reports for the July 2004 assaults so they have contributed to his inability to
5 determine when he had a cause of action against them. Furthermore, he argues that his claim
6 is continuing.

**II.    Motion to Dismiss**

      **A.    Legal Standard**

Under the Prison Litigation Reform Act (PLRA), a prisoner may not bring a lawsuit with respect to prison conditions under § 1983 unless all available administrative remedies are exhausted. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 126 S. Ct. 2378, 2384 (2006). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 919-21 (2007). Defendant bears the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

      **B.    Parties' Contentions**

In support of their motion, Defendants submit the affidavit of Aurora Aguilar, ADC Hearing Officer (Doc. #381, Ex. A, Aguilar Aff. ¶ 1), Department Order (DO) 802, Inmate Grievance System (id., Ex. A, Attach. 1), and the affidavit of Jeffrey Brand, Health Care Delivery Analyst, (id., Ex. B, Brand Aff. ¶ 1).

1    The DO provides a four-step standard-grievance process,[4] which is generally as
2 follows: (1) an inmate must submit an inmate letter to his assigned Correctional Officer
3 (C.O.) III, attempting to informally resolve a complaint within 10 days after becoming aware
4 of a problem; (2) if the inmate is not satisfied with the response, he may file a formal
5 grievance to the Grievance Coordinator within 10 calendar days of receipt of the response
6 to the inmate letter; (3) if the inmate is not satisfied with that response, he may file a
7 grievance appeal to a higher official—the Deputy Warden or Warden—within 10 calendar
8 days of the receipt of the Coordinator's response; and (4) if the inmate is not satisfied with
9 the response to his grievance appeal, he may appeal to the ADC Director within 10 calendar
10 days of receipt of the response from the Warden or Deputy Warden. The Director has 30
11 days from receipt to respond to an appeal. (Id., Ex. B.) DO 802.07 § 1.2.4 provides that
12 expiration of the time limit at any level of the grievance process entitles the inmate to
13 proceed to the next level of review. (Id., Ex. A.)

14    Aguilar attests that she examined the ADC Central Grievance Appeal Log for final
15 grievance appeals by Plaintiff concerning the conditions of confinement, overcrowding,
16 insufficient toilets and showers, etc. She found nothing to show that Plaintiff had filed final
17 grievance appeals. (Aguilar Aff. ¶¶ 9-10.) Brand attests that he reviewed the medical
18 Grievance Appeal Log and concluded that Plaintiff submitted no grievance appeals related
19 to stress, tension, mental anguish, or emotional or psychological injuries. (Brand Aff. ¶¶ 7-
20 8.)

21    In his response, Plaintiff does not dispute that he did not exhaust his remedies. He
22 asserts that in November 2007, he was told that he was the victim of three separate assaults,
23 apparently on July 15, 2004. He alleges that his injuries were severe and included brain
24 swelling and psychological injuries that caused partial memory loss and depression and post-
25 traumatic stress disorder. He is currently being treated for his injuries. Because of his
26 injuries, he was not able to use his physical and mental faculties until late August 2004.

27
28
---
[4]Medical grievances follow a similar three-step process. (Brand Aff. ¶ 5.)

- 4 -

1  (Doc. #55, Pls. Aff. ¶¶ 9, 13, 14, 16.) He also asserts that Toersbijns posted a letter to the
2  inmate population stating that double-bunking is not grievable, so Plaintiff did not file a
3  grievance on double-bunking. (Id. ¶ 18.) He argues that by the time he could initiate and
4  pursue the grievance procedure, the time for doing so had expired. (Doc. #55 at 7.) He also
5  supplements his response with three exhibits. (Doc. #56.)

6  In their reply, Defendants argue that Plaintiff admits that he did not exhaust his
7  remedies and that his reasons for his failure to exhaust do not, in fact, excuse the lack of
8  exhaustion. (Doc. #58.) They note that Plaintiff first entered ADC more than 20 years ago
9  and that he seemingly argues that he did not have anything to file a grievance about until July
10 15, 2004, when he was assaulted. They also assert that Plaintiff's response is untimely
11 because it was due March 28, 2008, but not signed until March 30, 2008, and that the
12 exhibits filed with the later Motion for order should be stricken as hearsay and lacking in
13 foundation. (Id. at 1 n. 1.)

14 **C.     Analysis**

15 The Court finds that Defendants have met their burden to demonstrate failure to
16 exhaust remedies as to the claims in the First Amended Complaint. Defendants submit
17 evidence that there is a grievance system, that inmates are informed of the process, and that
18 Plaintiff did not file any grievance on the issues raised in the First Amended Complaint, and
19 Plaintiff does not provide legally sufficient reasons for failing to do so.

20 First, the claims regarding the July 15, 2004 assault, raised in Count IV, were
21 previously dismissed. (Doc. #31.) Therefore, it is irrelevant that Plaintiff was not
22 immediately aware of facts giving rise to a belief that prison officials were liable for injuries
23 from the assault. As to his mental and psychological injuries, Plaintiff provides no specific
24 information about how these injuries prevented him from initiating, much less completing,
25 the inmate grievance process, or how long the injuries lasted, other than his allegation that
26 he could not use his physical and mental faculties until August 2004. Plaintiff claims that
27 it was too late to file a grievance, but as Plaintiff also argues, the claims about the results of
28 overcrowding were continuing, so Plaintiff could have filed a grievance at some point over

1    the two years before bringing this lawsuit.

2          As to Plaintiff's allegation that Toersbijns stated that double-bunking was not a
3    grievable issue, the Court notes the following.  First, a bare allegation of overcrowding does
4    not state a claim.  Hoptowit v. Ray, 682 F.2d 1237, 1249 (9th Cir. 1982).  Overcrowding can
5    result in certain effects which form the basis for a constitutional violation, such as increased
6    violence, the dilution of constitutionally required services, and shelter unfit for human
7    habitation.  Id.; see also Akao v. Shimoda, 832 F.2d 119, 120 (9th Cir. 1987) (*per curiam*)
8    (reversing district court's dismissal of claim that overcrowding caused increased stress,
9    tension, communicable disease, and confrontation between inmates).  Thus, Plaintiff's
10   allegations in Count I must go beyond a mere complaint about double-bunking in order to
11   state a claim.  In fact, Plaintiff complained of overcrowded conditions of confinement that
12   resulted in insufficient toilets and showers; limited exercise schedules; intolerable noise
13   levels; stress, tension, and hostilities between inmates; and increased violence.

14         Moreover, the language of Plaintiff's Exhibit B—which purports to be from
15   Toersbijns, although there is no signature—does not clearly prohibit filing a grievance on the
16   matters alleged in Count I.  (Doc. #56, Ex. B.)  The notice states that "Bed Management"
17   issues cannot be grieved. Thus, the notice does not clearly exclude as grievable issues the
18   matters raised in the claim.  Plaintiff cannot avoid the exhaustion requirement by merely
19   assuming that the matters were not grievable.  See Brown, 422 F.3d at 935 (a prisoner need
20   not continue to exhaust additional levels of review if he has either received all "available"
21   remedies at an intermediate level of review or "been reliably informed by an administrator
22   that no remedies are available").  Because Plaintiff never initiated the grievance process, he
23   cannot show that he received all available remedies at an intermediate level of review or that
24   he was reliably informed by an administrator that no remedies were available.

25         Defendants have met their burden to demonstrate that Plaintiff failed to exhaust his
26   administrative remedies.  The claims in Count I will be dismissed without prejudice, and the
27   Court will terminate the action.

28   //

1 **IT IS ORDERED:**

2     (1)    Defendants' Motion to Dismiss (Doc. #38) is **granted,** and the claims are dismissed without prejudice.

4     (2)    This action is **dismissed**, and the Clerk of Court must enter judgment accordingly.

DATED this 8th day of July, 2008.

*Earl H. Carroll*
Earl H. Carroll
United States District Judge